[No. A037043. First Dist., Div. Two. Mar. 18, 1988.]

NED LAMBERTON, Plaintiff, v.
RHODES-JAMIESON et al., Defendants and Respondents;
ASHBY METAL PRODUCTS, INC., Defendant and Appellant.

COUNSEL

Brian S. O'Malley and Glaspy & Glaspy for Defendant and Appellant.

Clyde A. Thompson, Winningham, Roberts, Fama & Thompson, Van De Poel, Strickland & Haapalal, N. A. Misciagna, P. Richard Colombatto, Gregory E. Ebstein and Misciagna, Schneider & Colombatto for Defendants and Respondents.

OPINION

SMITH, J.—In this case, a joint tortfeasor adjudged least culpable by the jury decided to forego an early postjudgment settlement with the plaintiff and pursue an appeal, while the other two main codefendants settled. Two years later, the nonsettling defendant gave up the appeal, but at a price almost twice that of its original percentage share of the judgment. It then came into court seeking to recoup the difference from the other two under California's contribution statutes. The issue here is the propriety of the trial court's denial of the dilatory defendant's motion for contribution.

## BACKGROUND

After a lengthy jury trial, the circumstances of which are not at issue here, a jury found in favor of plaintiff Ned Lamberton and against defendants Rhodes-Jamieson (Rhodes), Turner Construction Co. (Turner) and Ashby Metals Products, Inc. (Ashby). In a special verdict form, the jury found plaintiff's total damages to be $1,046,702.50 and apportioned liability 40 percent to plaintiff's employer (who was not a party to the action), 25 percent to Rhodes, 25 percent to Turner and 10 percent to Ashby.

In response to a motion for new trial brought by all defendants, the trial court issued a remittitur, reducing the damages to $396,702.50. Enforcement of a worker's compensation lien further reduced the damage award to $350,000. Under comparative fault principles, each party's fault-proportioned share of the remitted judgment was as follows: Rhodes, $145,833.33, Turner, $145,833.33, Ashby, $58,333.33.

Shortly after the remittitur, attorneys for all three defendants entered into intensive settlement negotiations with plaintiff's attorney. A settlement was proposed whereby, to avoid the prospect of costly appeals and possible future litigation, plaintiff offered to accept from each defendant payment representing a 14 percent reduction of its percentage share of the liability.

Rhodes and Turner both accepted the proposal and each paid plaintiff $125,000 in exchange for a full satisfaction of judgment. Ashby, however, insisted on a lower reduction; when plaintiff refused, Ashby withdrew from settlement talks and instead appealed from the judgment.

Nearly two years after plaintiff's settlement with defendants Rhodes and Turner, Ashby abandoned its appeal and settled the case by paying plaintiff $100,000, or more than $40,000 in excess of its original comparative percentage of the liability. Ashby then brought a motion for contribution under Code of Civil Procedure[1] section 875, seeking reimbursement from Rhodes and Turner for the amount Ashby paid to plaintiff "exceeding [its] proportionate share." The trial court denied the motion without comment. Ashby appeals.

## APPEAL

### I

This is a case where one party seeks contribution postjudgment under California contribution statutes. Unlike a prejudgment situation, the appar-

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

ent good faith settlement of Rhodes and Turner with plaintiff did not shield them from a contribution claim by another tortfeasor. (See §§ 877, subd. (b), 877.6.) Moreover, since there were no prejudgment cross-complaints for comparative indemnity under *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*), there was no alternative vehicle for Ashby to seek partial indemnification. Ashby therefore came into court seeking such relief by invoking section 875.[2]

Ashby contends that under section 875, subdivision (c), it had an absolute right to contribution from the other two joint tortfeasors for amounts it paid plaintiff in excess of its fault-proportioned share. Rhodes and Turner, on the other hand, claim that the court had discretion to deny contribution "in accordance with the principles of equity" (§ 875, subd. (b)) due to Ashby's allegedly inequitable postjudgment conduct. No one has correctly framed the issue however, because the parties have ignored the meaning of "pro rata" as defined in the contribution legislation itself.

Section 876, subdivision (a) plainly provides that "[t]he pro rata share of each tortfeasor judgment debtor *shall be determined* by dividing the entire judgment equally among all of them." (Italics added.) Here, each party's "pro rata" share must be computed by dividing the total judgment ($350,000) by the number of tortfeasor defendants (three). Simple arithmetic tells us each defendant's pro rata share is $116,666.66, give or take a fraction of a cent. Since Ashby paid only $100,000 while Rhodes and Turner paid $125,000 each, Ashby has no right to postjudgment contribution under section 875, for the dual reasons that (1) Ashby's right is limited to the *excess* of amounts paid over its pro rata share, and (2) "in no event" shall any tortfeasor be compelled to contribute *more* than its pro rata share. (§ 875, subd. (c).)

## II

How, one may well ask, is this result conceivable in the modern era of apportionment of liability in accordance with fault? The answer is that the

---

[2]That section provides, in pertinent part, as follows: "(a) Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided.

"(b) Such right of contribution shall be administered in accordance with the principles of equity.

"(c) Such right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof. It shall be limited to the excess so paid over the pro rata share of the person so paying and in no event shall any tortfeasor be compelled to make contribution beyond his own pro rata share of the entire judgment.

". . . . . . . . . . . . . . . . . .

"(g) This title shall not impair the right of a plaintiff to satisfy a judgment in full as against any tortfeasor judgment debtor."

contribution statutes were enacted in 1957, well before the judicial adoption of comparative negligence.

At common law there was no right to contribution among tortfeasors. (*Bartneck* v. *Dunkin* (1969) 1 Cal.App.3d 58, 62 [81 Cal.Rptr. 428].) As a result, plaintiff could elect to satisfy an entire judgment from one tortfeasor, who would have no equitable recourse against the others. In 1957, the Legislature set out to lessen the harshness of this doctrine by enacting the contribution statutes, which gave the trial court the equitable power to enforce contribution where tortfeasors had paid unequal shares of the judgment. (*AMA, supra,* 20 Cal.3d 578, 601.) In what was then an era of all-or-nothing contributory negligence, the most equitable means of providing for contribution appeared to be simply dividing the burden of the judgment equally among defendants. Hence section 876, subdivision (a) prescribed apportionment "pro rata," that is, in equal shares, with a single share allocated to two defendants where one is held vicariously liable for the act of the other. (*River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 990 [103 Cal.Rptr. 498]; see Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated With American Motorcycle Association v. Superior Court* (1979) 30 Hastings L.J. 1464, 1485 (Fleming).)

In 1975 along came *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and with it judicial adoption of pure comparative negligence. (*Id.,* at p. 828-829.) Three years later the California Supreme Court created the right of a defendant to cross-complain for partial equitable indemnity from concurrent tortfeasors according to proportionate fault. (*AMA, supra,* 20 Cal.3d 578, 591.) In doing so, the court had to tiptoe through the contribution statutes and conclude that in enacting them the Legislature did not intend to preclude judicial evolution of a comparative indemnification doctrine. (*Id.,* at p. 602.) The *AMA* court avoided clashing with the "pro rata" formula still lurking in contribution legislation with the remark: "We need not decide whether [§ 875, subd. (b)] would permit our court to interpret the contribution statute itself as providing for comparative rather than per capita contribution [citation], for we think that, at the least, this provision demonstrates that the Legislature did not conceive of its contribution legislation as a complete and inflexible system for the allocation of loss between multiple tortfeasors." (*Id.,* at pp. 602-603.)

The introduction of the *AMA* cross-complaint quickly made the subject of postjudgment contribution largely academic, since most defendants seized the opportunity to file prejudgment cross-complaints and have their proportionate responsibilities determined in the same action. Moreover, the

good faith settlement provisions of section 877 and later section 877.6 gave defendants the opportunity to make peace with the plaintiff before judgment and, in most cases, be, free from claims for contribution asserted by the other tortfeasors. (See, e.g., *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 283 [188 Cal.Rptr. 580].) Still, however, the old pro rata scheme remains alive and has been applied even post-*AMA*. (See *Mizirawi* v. *Holl* (1982) 135 Cal.App.3d 322, 325 [185 Cal.Rptr. 328].)

As Professor John Fleming has written, pro rata contribution is flatly incompatible with apportionment of liability according to fault. Accordingly, in his report to the Legislature on the ramifications of *AMA* in 1979, he urged the pro rata system be replaced by the enactment of statutory contribution in proportion to fault. (Fleming, *op. cit. supra,* at pp. 1486-1487.) His advice has gone unheeded.

In *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441] our Supreme Court circumvented the contribution statutes without judicially abolishing them. There the jury found Safeway 80 percent and Nest-Kart 20 percent liable for plaintiff's damages. After paying 80 percent of the judgment, Safeway filed a motion for contribution, seeking to compel Nest-Kart to bear 50 percent of the loss. The trial judge felt that he was compelled by the contribution statutes to grant the motion. (*Id.,* at pp. 326-327.) The California Supreme Court reversed, however, again reiterating its conclusion in *AMA* that "the existing contribution statutes *do not in themselves necessarily prohibit* apportionment of liability among multiple tortfeasors . . . ." (*Id.,* at p. 328, italics added.) While most of the discussion centered around whether strict liability can be compared with negligence, the court also commented: "With the advent of the common law comparative indemnity doctrine, we achieve a more precise apportionment of liability in circumstances such as the instant case by allocating damages on a comparative fault or a comparative responsibility basis, rather than by fixing an inflexible pro rata apportionment pursuant to the contribution statutes." (*Id.,* at p. 331.)

*Safeway* does not undertake to rewrite the pro rata statute, but instead manifests a continuing resolve by the Supreme Court to ignore it. *Safeway* affirms the court's equitable power to refrain from applying the contribution statutes where payment has been made in accordance with comparative responsibility.

## III

If the Legislature has not revised the pro rata rule, is this court free to replace it? We think not. As noted earlier, the *AMA* court suggested that the

provision of section 875, subdivision (b) allowing the court to apply contribution "in accordance with the principles of equity" might permit the contribution statute to be "interpreted" to permit fault-proportioned rather than pro rata postjudgment contribution. (*AMA, supra,* 20 Cal.3d at pp. 602-603.) In our view, there is nothing to "interpret." Section 876 states that the pro rata share *shall be determined* by dividing the judgment equally among the number of defendants. The Legislature has the power to prescribe legal definitions of its own language, and when the meaning to be given to particular terms is prescribed by the Legislature, it is binding on the courts. (*In re Marriage of Stephens* (1984) 156 Cal.App.3d 909, 913 [203 Cal.Rptr. 331]; *Tomlin* v. *Cole* (1984) 152 Cal.App.3d 556, 559 [199 Cal.Rptr. 632]; *Application of Monrovia Evening Post* (1926) 199 Cal. 263, 270 [248 P. 1017].) ■ "It is a cardinal rule that a court is not justified in ignoring the plain words of a statute unless it clearly appears that the language used is contrary to what, beyond question, was the intent of the Legislature [citation]." (*Breshears* v. *Indiana Lumbermens Mut. Ins. Co.* (1967) 256 Cal.App.2d 245, 250 [63 Cal.Rptr. 879].) " 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ Since the adoption of comparative negligence was almost 20 years away, the Legislature could not possibly have intended "pro rata" to mean fault proportioned rather than per capita as prescribed in section 876, subdivision (a). There is absolutely no basis for inferring that the Legislature meant anything other than what the plain words of the statute say.[3]

In the wake of *AMA* indemnity cross-actions and good faith prejudgment settlement motions, postjudgment motions for contribution are becoming increasingly rare. The recent enactment of Proposition 51, which limits a defendant's liability for noneconomic damages to his percentage of comparative fault (Civ. Code, § 1431.2, subd. (a)) will further reduce the number of such motions. Nevertheless, the Legislature is remiss in continuing to allow the antiquated pro rata contribution rule to exist in the modern world of allocating responsibility according to fault. As illustrated by the good faith settlement statute (§ 877.6), the Legislature is capable of responding to

---

[3] Ashby's contention at oral argument that *Paradise Valley Hospital* v. *Schlossman* (1983) 143 Cal.App.3d 87 [191 Cal.Rptr. 531] commands fault-proportioned liability under section 875 is without merit. The court in *Paradise Valley* was grappling with the situation of how to apportion liability among joint tortfeasors where one of them was insolvent. As in *Safeway,* the court decided to bypass the contribution statutes and opted for a sharing of liability in proportion to comparative fault. (*Id.,* at pp. 92-93.) Unlike the situation in *Paradise Valley,* we are not writing on a clean slate, but are asked to apply a statute which was enacted well before the advent of comparative negligence. That the result might be inconsistent with "enlightened" judicially developed concepts is lamentable, but unavoidable.

problems which have been created by multiparty contribution/indemnity claims under *AMA*. We urge it to do so in this instance.

## DISPOSITION

Since Ashby's settlement did not exceed its "pro rata share" as defined in section 876 subdivision (a), it was not entitled to contribution under section 875. It is therefore unnecessary for us to decide whether the trial court, under principles of equity, may deny or reduce the level of contribution where it is otherwise statutorily permissible. (See, however, *AMA, supra,* 20 Cal.3d 578, 603; *Caterpillar Tractor Co.* v. *Teledyne Industries* (1975) 53 Cal.App.3d 693, 699 [126 Cal.Rptr. 455]; *Rollins* v. *State of California* (1971) 14 Cal.App.3d 160, 165, fn. 8 [92 Cal.Rptr. 251].)

The order denying the motion for contribution is affirmed.

Kline, P. J., and Benson, J., concurred.